STATE OF NORTH CAROLINA
v.
MICHAEL DOUGLAS FEASTER, JR., Defendant.
No. COA07-154
Court of Appeals of North Carolina.
Filed October 2, 2007
This case not for publication
Attorney General Roy Cooper, by Special Deputy Attorney General Victoria L. Voight, for the State.
Gilda C. Rodriguez for defendant-appellant.
BRYANT, Judge.
Michael Douglas Feaster, Jr., (defendant) was found guilty of robbery with a dangerous weapon and felonious breaking and entering. He was sentenced to terms of imprisonment of sixty-one to eighty-three months and seven to nine months.
The State presented evidence tending to show that on the morning of 2 June 2006, defendant visited Kevin Thompson at the residence Kevin inhabited in Shelby with his father, Calvin Thompson (hereinafter "Mr. Thompson"). Defendant told Mr. Thompson that another son owed defendant some money. Mr. Thompson gave defendant $40 in cash in payment of the debt and told defendant to leave. Defendant took the money and departed. Later that day, Mr. Thompson's mother delivered groceries to his residence. She testified that a young man dressed in black pants and a white shirt was sitting on the front porch of the residence. She unloaded the groceries from her automobile and placed them on the porch. The young man helped carry the groceries into the residence. After unloading the groceries, she drove away.
Mr. Thompson confronted the young man, whom he identified as defendant, and said, "I thought I told you to leave." Defendant placed the groceries down and left. Mr. Thompson locked the screen door and sat down to watch television. Mr. Thompson subsequently felt an arm wrapped around his neck and a gun placed to the back of his head. The intruder, whom he identified as defendant, forced him to lie on the floor on his stomach. Defendant reached into Mr. Thompson's back pocket and retrieved a bank envelope containing $255 in cash. Defendant took the money and ran.
Mr. Thompson ran to his mother's house and called the police. Officer Michael Bailey of the Shelby Police Department responded to the call at 3:45 p.m. that day. Mr. Thompson reported to Officer Bailey that he had been robbed by a man wearing a white silk shirt and black dress pants. Mr. Thompson gave a description of the assailant, whom he knew by the name of "Darkside." Mr. Thompson stated that the man threw him to the floor, held a gun to the back of his head, and took $280 in cash from him. Officer Bailey walked through Mr. Thompson's residence and saw groceries on a table. Officer Bailey also observed that the lock to the door was broken. Officer Michael Watson of the Shelby Police Department also responded to the call. Mr. Thompson told him that a son's friend named "Darkside" had been to his residence earlier that day and that Mr. Thompson had asked this man to leave the residence. Later in the day, Mr. Thompson's mother brought some groceries and the man named "Darkside" helped carry the groceries into the residence. Mr. Thompson directed Darkside to leave. Darkside subsequently entered the residence, placed Mr. Thompson in a choke hold, held a gun to the back of Mr. Thompson's head, forced Mr. Thompson to lie on his stomach, and removed money contained in an envelope in Mr. Thompson's back pocket. The man took the money and fled. Mr. Thompson described Darkside as approximately five-feet, six-inches in height, weighing 180 to 190 pounds, and wearing a white silk shirt, black dress pants, black leather shoes, and a derby hat.
Sergeant Stephen Seate of the Shelby Police Department received the file on 5 June 2006. He recognized a name given in Mr. Thompson's statements. He prepared a photograph lineup of eight photographs that contained one photograph of this suspect. He showed the lineup to Mr. Thompson, who identified the fifth photograph, that of defendant, as the perpetrator.
Defendant did not present any evidence.
Defendant presents the issues of: (I) whether the trial court erred in denying defendant's motion to dismiss based on lack of physical evidence, credibility problems with the only witness and ineffective assistance of counsel; and (II) whether defendant received ineffective assistance of counsel because during the trial his counsel repeatedly asked the witness if he had bought drugs from defendant, alleging that this line of questioning created prejudice against defendant. For the reasons stated below, we find no error.

I
Defendant assigns as error the denial of his motion to dismiss the charges for insufficient evidence. In deciding a motion to dismiss, the trial court must determine whether there is substantial evidence of each essential element of the offense charged and of the defendant's perpetration of the offense. State v. Earnhardt, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." State v. Scott, 356 N.C. 591, 597, 573 S.E.2d 866, 869 (2002). If the evidence "is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator, the motion to dismiss must be allowed." State v. Malloy, 309 N.C. 176, 179, 305 S.E.2d 718, 720 (1983).
Defendant argues that Mr. Thompson's statements to law enforcement officers and his trial testimony are so "riddled with many inconsistencies and omissions" and not supported by "any physical evidence or independent testimony" that the court erred by denying the motion to dismiss. However, in deciding a motion to dismiss the court is required to consider the evidence in the light most favorable to the State, giving it the benefit of every reasonable inference that may be drawn. State v. Powell, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980). Contradictions and discrepancies are for the jury to resolve and do not warrant dismissal. Id. The issue for the court is simply whether a reasonable inference of the defendant's guilt may be drawn from the evidence. Id.
We conclude a reasonable inference of defendant's guilt may be drawn from the evidence presented. We hold the court properly denied the motion to dismiss the charges. This assignment of error is overruled.

II
Defendant also contends that he was denied effective assistance of counsel because his trial counsel asked Mr. Thompson, during cross examination, whether he had consumed marijuana with or purchased drugs from defendant. Defendant argues that counsel's insinuation that defendant consumed or sold illegal drugs was highly prejudicial.
To establish a claim of ineffective assistance of counsel, a defendant must satisfy a two-prong test which was developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, reh'g denied, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). State v. Braswell, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985). First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. Id. at 561-62, 324 S.E.2d at 248. Second, the defendant must show that the error committed was so serious that a reasonable probability exists that the trial result would have been different absent the error. Strickland at 694, 80 L. Ed. 2d at 698. The Court in Strickland reasoned that
[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'
Id. at 689, 80 L. Ed. 2d at 694-95 (citations omitted). Regardless, the Court stated, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691, 80 L. Ed. 2d at 696.
It is apparent from a reading of counsel's cross examination of Mr. Thompson that counsel's strategy was to attempt to discredit Mr. Thompson's credibility, given that Mr. Thompson was the sole witness to the crimes, by any means possible even if it meant placing defendant's character at issue. As Strickland cautions, we are not to engage in judicial second guessing of counsel's strategy. We note that counsel did not concede defendant's guilt of the charged crimes or of any lesser offense thereof. We are also not convinced that had counsel not engaged in this line of cross examination, a different verdict probably would have resulted given the strong and uncontradicted evidence of defendant's guilt. This assignment of error is overruled.
Defendant has abandoned his remaining assignments of error by not bringing them forward in his brief. N.C. R. App. P. 28(b)(6).
No error.
Judges WYNN and ELMORE concur.
Report per Rule 30(e).