IN THE SUPREME COURT OF NORTH CAROLINA

 2022-NCSC-15

 No. 385PA20

 Filed 11 February 2022

 STATE OF NORTH CAROLINA

 v.
 MITCHELL ANDREW TUCKER

 On discretionary review pursuant to N.C.G.S. § 7A-31 of a divided decision of

 the Court of Appeals, 273 N.C. App. 174 (2020), reversing in part and vacating in part

 judgments entered on 30 May 2018 by Judge Jesse B. Caldwell III in Superior Court,

 Mecklenburg County. Heard in the Supreme Court on 9 November 2021.

 Joshua H. Stein, Attorney General, by Bethany A. Burgon, Assistant Attorney
 General, for the State-appellant.

 Guy J. Loranger for defendant-appellee.

 BARRINGER, Justice.

¶1 In this matter, we consider whether the Court of Appeals erred by reversing

 several of defendant’s convictions for insufficient evidence. After careful review, we

 conclude the Court of Appeals erred. Thus, we reverse the decision of the Court of

 Appeals.

 I. Procedural Background

¶2 Defendant was indicted by a grand jury for violating a civil domestic violence

 protective order while in possession of a deadly weapon, felonious breaking or
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 entering, assault with a deadly weapon, and assault on a female. The grand jury

 subsequently indicted defendant for the status offenses of habitual breaking and

 entering and habitual felon.

¶3 During trial, defendant twice moved to dismiss the charges relating to the

 violation of the civil domestic violence protective order. Defendant argued that the

 State had failed to prove that defendant had knowledge of the 6 September 2017

 domestic violence protective order (6 September 2017 DVPO) in effect at the time of

 the alleged crimes. The trial court denied the motions to dismiss.

¶4 The jury returned verdicts finding defendant guilty of violating a civil domestic

 violence protective order while in possession of a deadly weapon, felonious breaking

 or entering in violation of a valid domestic violence protective order, assault with a

 deadly weapon, and assault on a female. Defendant pleaded guilty to attaining

 habitual felon status, and the trial court dismissed the habitual breaking and

 entering charge pursuant to the plea arrangement.

¶5 The trial court consolidated the convictions of violating a civil domestic

 violence protective order while in possession of a deadly weapon, felonious breaking

 or entering, and habitual felon and sentenced defendant to a minimum of 95 months

 and a maximum of 126 months of imprisonment. The trial court separately sentenced

 defendant to 60 days for assault with a deadly weapon and 30 days for assault on a

 female, both to be served consecutive to the first sentence. All time was to be served
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 in the custody of the North Carolina Department of Adult Correction and Juvenile

 Justice.

¶6 Defendant appealed. On appeal, defendant presented two issues:

 I. Did the trial court err by denying [defendant’s]
 motion to dismiss the charge of violating a domestic
 violence protective order while in possession of a deadly
 weapon where the State failed to present evidence that
 [defendant] had knowledge of the 6 September 2017
 [DVPO]?

 II. Did the trial court err or commit plain error in
 violation of [defendant’s] right to a unanimous verdict by
 instructing the jury that it could find him guilty of felony
 breaking and entering based on one alternative theory of
 guilt[ ]—[defendant] intended to commit a felony domestic
 violence protective order violation—which the evidence
 failed to support?

¶7 The Court of Appeals majority opinion concluded that the State “presented no

 evidence that defendant received notice or was otherwise aware of the

 [6 September 2017] DVPO.” State v. Tucker, 273 N.C. App. 174, 178 (2020). The Court

 of Appeals viewed defendant’s statement—“I know” in response to the victim’s

 statement, “I got a restraining order”1—to be “evidence” that “is simply too tenuous

 1 This Court has ordered that State’s Exhibit 14 be added to the record on appeal,

 pursuant to Rule 9(b)(5)(b) of the North Carolina Rules of Appellate Procedure. State’s
 Exhibit 14 is the recording played to the jury capturing the exchange between the victim,
 Pasquarella, and defendant. The recording is from the responding officer’s body camera. The
 Court of Appeals used slightly different quotes in its opinion when describing the exchange,
 State v. Tucker, 273 N.C. App. 174, 177–78 (2020), but the Court of Appeals does not appear
 to have requested or had access to State’s Exhibit 14.
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 to form a basis for a reasonable inference by the jury,” id. at 179. The Court of Appeals

 therefore concluded that the trial court erred by “denying defendant’s motions to

 dismiss the charge of violation of a protective order while in possession of a deadly

 weapon, as the State failed to present sufficient evidence of defendant’s knowledge of

 the [6 September 2017] DVPO.” Id. at 180.

¶8 Since the COA concluded that the State did not present sufficient evidence of

 defendant’s knowledge of the 6 September 2017 DVPO, the Court of Appeals

 additionally determined that the trial court plainly erred in permitting the jury to

 convict defendant of felonious breaking or entering in violation of the

 6 September 2017 DVPO. Id. at 180–81. The Court of Appeals thus reversed

 defendant’s convictions for violation of a protective order while in possession of a

 deadly weapon and felonious breaking or entering. Id. at 181. As these charges

 formed the basis of defendant’s habitual felon plea, the Court of Appeals also vacated

 the plea. Id.

¶9 The State petitioned for discretionary review pursuant to N.C.G.S. § 7A-31,

 arguing that the Court of Appeals erred by reversing the aforementioned convictions

 for insufficient evidence. This Court allowed discretionary review.

 II. Standard of Review

¶ 10 “Whether the State presented substantial evidence of each essential element

 of the offense is a question of law; therefore, we review the denial of a motion to
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

dismiss de novo.” State v. Crockett, 368 N.C. 717, 720 (2016). The question for a court

on a motion to dismiss for insufficient evidence “is whether there is substantial

evidence (1) of each essential element of the offense charged, or of a lesser offense

included therein, and (2) of defendant’s being the perpetrator of such offense.” State

v. Powell, 299 N.C. 95, 98 (1980). “If so, the motion is properly denied.” Id. Substantial

evidence is the same as more than a scintilla of evidence. Id. at 99.

 In reviewing challenges to the sufficiency of evidence, we
 must view the evidence in the light most favorable to the
 State, giving the State the benefit of all reasonable
 inferences. Contradictions and discrepancies do not
 warrant dismissal of the case but are for the jury to resolve.
 The test for sufficiency of the evidence is the same whether
 the evidence is direct or circumstantial or both.
 Circumstantial evidence may withstand a motion to
 dismiss and support a conviction even when the evidence
 does not rule out every hypothesis of innocence. If the
 evidence presented is circumstantial, the court must
 consider whether a reasonable inference of defendant’s
 guilt may be drawn from the circumstances. Once the court
 decides that a reasonable inference of defendant’s guilt
 may be drawn from the circumstances, then it is for the
 jury to decide whether the facts, taken singly or in
 combination, satisfy it beyond a reasonable doubt that the
 defendant is actually guilty.

State v. Barnes, 334 N.C. 67, 75–76 (1993) (cleaned up). In making this

determination, a court “is to consider all evidence actually admitted, competent or

incompetent, which is favorable to the State, disregarding defendant’s evidence

unless favorable to the State.” State v. Baker, 338 N.C. 526, 558–59 (1994). “When

ruling on a motion to dismiss, the trial court should be concerned only about whether
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 the evidence is sufficient for jury consideration, not about the weight of the evidence.”

 State v. Fritsch, 351 N.C. 373, 379 (2000).

 III. Analysis

¶ 11 To sustain a charge of violating a civil domestic violence protective order while

 in possession of a deadly weapon, the State must present substantial evidence that a

 defendant:

 while in possession of a deadly weapon on or about his or
 her person or within close proximity to his or her person,
 knowingly violate[d] a valid protective order as provided in
 subsection (a) of this section by failing to stay away from a
 place, or a person, as so directed under the terms of the
 order.

 N.C.G.S. § 50B-4.1(g) (2021). In this matter, the valid protective order is the civil

 domestic violence protective order entered on 6 September 2017.

¶ 12 Defendant argued before the trial court, the Court of Appeals, and now this

 Court that the State failed to present substantial evidence of defendant’s

 knowledge—namely, his knowledge of the 6 September 2017 DVPO. We disagree.

 Under the well-established standard of review, substantial evidence existed from

 which the jury could infer that defendant “knowingly violate[d]” the

 6 September 2017 DVPO. See N.C.G.S. § 50B-4.1(g).

¶ 13 The State’s evidence at trial showed the following: Deanna Pasquarella and

 defendant were girlfriend and boyfriend for about six- or seven-months. They were

 both homeless when they met in 2016.
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

¶ 14 In August 2017, Pasquarella applied for and obtained an ex parte domestic

 violence protective order (ex parte DVPO) after defendant repeatedly struck her with

 an umbrella as they were crossing the street at the Lynx light rail station. The ex

 parte DVPO was effective until 6 September 2017. An employee of the Sheriff’s Office

 Domestic Violence Enforcement Team read the ex parte DVPO to defendant;

 answered defendant’s questions; and served defendant with the ex parte DVPO, the

 civil summons, and the Notice of Hearing on Domestic Violence Protective Order. The

 Notice states that the hearing would be held on 6 September 2017 at 1:30 p.m. in

 Courtroom 4110, Mecklenburg County Courthouse, and “[a]t that hearing[,] it will be

 determined whether the Order will be continued.”

¶ 15 At the 6 September 2017 hearing, Pasquarella obtained the 6 September 2017

 DVPO. This DVPO was issued on 6 September 2017 and effective until

 6 September 2018. Pasquarella attended the hearing, but defendant was not present.

¶ 16 On the morning of 7 September 2017, Pasquarella heard a knock on her

 apartment door. She looked through the peephole on her door and saw that defendant

 was there. Pasquarella called the police and locked herself in the closet. Defendant

 broke a window in her apartment, climbed through the window into the apartment,

 and opened the door to the closet where Pasquarella was hiding. Defendant grabbed

 her cell phone and then started hitting her, punching her, and grabbing her by the

 collar of her shirt. Eventually, he retrieved a knife from his backpack. Defendant then
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 put the knife to Pasquarella’s throat and said, “I’m going to jail anyway. I might as

 well kill you, bitch.”

¶ 17 The police officer responding to Pasquarella’s domestic violence call entered

 the apartment through the front door and observed defendant on top of Pasquarella.

 The police officer instructed defendant to get off Pasquarella. Defendant then started

 repeating, “I’m going to jail.” The police officer then handcuffed defendant as

 defendant stepped away from Pasquarella. Pasquarella shortly thereafter asked,

 “Well, why’d you do it?” and defendant responded, “Why’d you do it?” Defendant later

 said, “Man, I messed up.” Pasquarella stated, “I got a restraining order,” to which

 defendant responded, “Yeah, I know you did.”

¶ 18 The State contends the Court of Appeals misapplied the standard of review

 and erroneously analyzed the evidence in the light most favorable to defendant. We

 agree that the Court of Appeals erred.

¶ 19 The Court of Appeals identified that a court must view the evidence in the light

 most favorable to the State and resolve every reasonable inference in favor of the

 State. Tucker, 273 N.C. App. at 177. Nonetheless, the Court of Appeals failed to follow

 this standard. It initially ignored the State’s evidence of defendant’s statement, “I

 know,” by concluding that “the State presented no evidence that defendant received

 notice or was otherwise aware of the [6 September 2017] DVPO.” Id. at 178 (emphasis

 added). Yet, the Court of Appeals then determined that defendant’s statement, “I
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 know,” which the State argued showed defendant was aware of the second DVPO,

 was “too tenuous to form a basis for a reasonable inference by the jury.” Id. at 179.

¶ 20 The State introduced, and the trial court allowed into evidence, the recording

 from the responding officer’s body camera. The State then played for the jury the

 recording. That recording captured Pasquarella saying, “I got a restraining order,”

 and defendant responding, “Yeah, I know you did.” The State replayed the recording

 for the trial court when defendant first moved to dismiss for insufficient evidence.

¶ 21 Defendant’s statement that he was aware of the existence of the DVPO was

 evidence that could be viewed in different lights. However, the applicable standard of

 review for a motion to dismiss for insufficient evidence requires a court to view the

 evidence in the light most favorable to the State. Barnes, 334 N.C. at 75. Therefore,

 the Court of Appeals was required to consider this evidence in the light most favorable

 to the State when reviewing de novo the trial court’s denial of the motion to dismiss

 for sufficiency of the evidence. The Court of Appeals erred by not viewing the evidence

 in this light.

¶ 22 Defendant argued that his statement could refer to the ex parte DVPO, which

 expired on 6 September 2017, Tucker, 273 N.C. App. at 178, and the Court of Appeals

 adopted defendant’s view, ignoring other possible meanings of defendant’s

 declaration, id. at 178. By determining that the State’s evidence was “too tenuous,”

 id. at 178–79, the analysis by the Court of Appeals impermissibly focused on the
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

 weight, not the sufficiency, of the evidence. However, that was the task of the jury—

 not the court. The proper application of the standard of review does not involve

 weighing the evidence, Fritsch, 351 N.C. at 379, considering defendant’s evidence

 that is not favorable to the State, Baker, 338 N.C. at 558–59, or contemplating what

 evidence the State “should have presented,” State v. Miller, 363 N.C. 96, 100–01

 (2009).

¶ 23 Applying the proper standard of review, we hold that the properly considered

 evidence, taken in the light most favorable to the State, was sufficient to support a

 determination that defendant “knowingly violate[d]” the 6 September 2017 DVPO.

 See N.C.G.S. § 50B-4.1(g). Defendant’s statement, “I know,” in addition to his other

 statements, conduct, and the timing of such conduct, supports this holding. The

 existence of evidence that could support different inferences is not determinative of a

 motion to dismiss for insufficient evidence. See Barnes, 334 N.C. at 75. The evidence

 need only be sufficient to support a reasonable inference. See id.

 IV. Conclusion

¶ 24 As we conclude that the Court of Appeals erred and that there is sufficient

 evidence of defendant’s knowledge of the 6 September 2017 DVPO for his convictions,

 we reverse the decision of the Court of Appeals. Accordingly, because we reverse the

 Court of Appeals on the issue of defendant’s violation of the domestic violence

 protective order, we reinstate defendant’s convictions that were reversed or vacated
 STATE V. TUCKER

 2022-NCSC-15

 Opinion of the Court

by the Court of Appeals—violating a civil domestic violence protective order while in

possession of a deadly weapon, felonious breaking or entering, and habitual felon.

 REVERSED.