IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-729

Filed 19 March 2024

Surry County, No. 22 CRS 050194

STATE OF NORTH CAROLINA

v.

JACOB GREY SHELTON, Defendant.

Appeal by Defendant from judgment entered 10 January 2023 by Judge Angela B. Puckett in Surry County Superior Court. Heard in the Court of Appeals 5 March 2024.

> *Attorney General Joshua H. Stein, by Deputy General Counsel Tiffany Lucas, for the State.*

> *Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for Defendant.*

GRIFFIN, Judge.

Defendant Jacob Grey Shelton appeals from the trial court's judgment entered after a jury found him guilty of first-degree sexual exploitation of a minor. Defendant contends the trial court erred by denying his motion to dismiss the charge because there was insufficient evidence to show he took photographs of a minor which depicted "sexual activity." We find no error.

## I. Factual and Procedural Background

This case concerns an incident where Defendant took nude photographs of a minor female. The evidence tended to show as follows:

Late one night in Fall 2021, Defendant entered the bedroom of his girlfriend's daughter, Rachel,[1] and asked her to do "just this one thing for [him]." Rachel agreed because Defendant promised he would buy her whatever she wanted for Christmas in exchange. Defendant then forcibly and fully undressed Rachel, posed her on her bed, and took photographs of her with his cell phone. Defendant went to the bathroom for about fifteen minutes, and thereafter left Rachel alone for the remainder of the night. Rachel did not tell anyone what Defendant did that night. Rachel had witnessed Defendant be physically abusive to her mother before and feared he would hurt them if she told anyone.

Rachel eventually told a friend at school and the school guidance counselor what happened. The guidance counselor reported Rachel's statements to the Department of Social Services, who began investigating the next day and engaged the Sheriff's Office. Law enforcement interviewed Defendant twice regarding the incident. Detective Doiel of the Surry County Sheriff's Office first interviewed Defendant on 13 December 2021. Defendant denied taking any pictures of Rachel and said that, though he had gone into her room that night, it was to help her clean. Detective Doiel requested Defendant return the next day and Defendant agreed. Agent Stovall with the State Bureau of Investigation interviewed Defendant again the next day. Defendant once again denied taking any photos at first, but eventually

---

[1] We use a pseudonym to protect the identity of the juvenile and for ease of reading. *See* N.C. R. App. P. 42(b).

admitted that he had taken two photographs of Rachel while she sat naked on her bed. Defendant said he realized his actions were wrong and deleted the pictures the next day. Detective Doiel then joined Agent Stovall in the room and Defendant repeated his confession, including confirmation that Rachel's legs were spread slightly apart when he took the photographs.

On 21 February 2022, a grand jury indicted Defendant on one charge of first-degree sexual exploitation of a minor. Defendant's case came on for jury trial on 24 October 2022 in Surry County Superior Court. During trial, the State presented the testimony of Rachel's guidance counselor, Detective Doiel, Agent Stovall, and Rachel. The State showed the jury a video recording of Defendant's confession to Detective Doiel and Agent Stovall. Defendant elected not to present any evidence. Defendant made a motion to dismiss the State's charge at the close of the State's evidence and again after stating his decision not to present any evidence. The trial court denied each motion.

The jury found Defendant guilty of first-degree sexual exploitation of a minor. On 10 January 2023, the trial court entered judgment on the jury's verdict and sentenced Defendant to a term of 73 to 148 months' imprisonment. Defendant entered oral notice of appeal in open court.

## II.    Analysis

Defendant contends the trial court erred by "denying [Defendant's] motion to dismiss where (1) the actual photos at issue were deleted long before trial, and (2) the

other evidence failed to prove that those photos depicted 'sexual activity' as defined by statute." Essentially, Defendant asserts the State failed to present direct evidence that the photographs showed sexual activity, and the remaining circumstantial evidence was insufficient as well. We disagree.

"'In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator.'" *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015) (quoting *State v. Mann*, 355 N.C. 294, 301, 560 S.E.2d 776, 781 (2002)). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed . . . even if the suspicion so aroused by the evidence is strong." *State v. Campbell*, 373 N.C. 216, 221, 835 S.E.2d 844, 848 (2019) (internal marks omitted) (quoting *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)). The evidence must be considered in the light most favorable to the State, and "[c]ontradictions and discrepancies in the evidence are strictly for the jury to decide." *State v. Lowery*, 309 N.C. 763, 766, 309 S.E.2d 232, 236 (1983) (citation omitted); *State v. Golder*, 374 N.C. 238, 249–50, 839 S.E.2d 782, 790 (2020) (citations omitted). "Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Chekanow*, 370 N.C. 488, 492, 809 S.E.2d 546, 550 (2018) (internal marks and citation omitted).

"[S]ubstantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Campbell*, 373 N.C. at 221, 835 S.E.2d at 848 (citation omitted). Evidence may be direct or circumstantial:

> Direct evidence is that which is immediately applied to the fact to be proved, while circumstantial evidence is that which is indirectly applied, by means of circumstances from which the existence of the principal fact may reasonably be deduced or inferred. In other words, as has been said, circumstantial evidence is merely direct evidence indirectly applied.

*State v. Wright*, 275 N.C. 242, 249–50, 166 S.E.2d 681, 686 (1969) (citation omitted). "'It is immaterial whether the substantial evidence is circumstantial or direct, or both.'" *State v. Ambriz*, 286 N.C. App. 273, 277, 880 S.E.2d 449, 457 (2023) (citation omitted). "Circumstantial evidence and direct evidence are subject to the same test for sufficiency, and the law does not distinguish between the weight given to direct and circumstantial evidence[.]" *State v. Parker*, 354 N.C. 268, 279, 553 S.E.2d 885, 894 (2001) (citations omitted). "'Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. The evidence need only give rise to a reasonable inference of guilt in order for it to be properly submitted to the jury[.]'" *State v. Stone*, 323 N.C. 447, 452, 373 S.E.2d 430, 433 (1988) (citations omitted). Cases involving sexual exploitation are not exceptions to these principles. *See Cinema I Video, Inc. v. Thornburg*, 83 N.C. App. 544, 570, 351 S.E.2d 305, 321 (1986) (confirming in sexual exploitation of minor case that "the jury *may* be convinced beyond a reasonable doubt

- 5 -

by the State's presentation of circumstantial evidence").

Section 14-190.16 of the North Carolina General Statutes sets out the offense of first-degree sexual exploitation of a minor to be conduct which causes a minor to engage in sexual activity with the intent to make a visual representation of that activity:

> A person commits the offense of first degree sexual exploitation of a minor if, knowing the character or content of the material or performance, he:
>
> (1) Uses, employs, induces, coerces, encourages, or facilitates a minor to engage in or assist others to engage in sexual activity for a live performance or for the purpose of producing material that contains a visual representation depicting this activity[.]

N.C. Gen. Stat. § 14-190.16 (2021). Defendant does not challenge whether the evidence showed that he knowingly made a visual representation—photographs—of Rachel while she was completely naked. Defendant challenges only the sufficiency of the State's evidence showing whether the photographs taken depicted "sexual activity."

"Sexual activity" is defined, among other things, to include "[t]he lascivious exhibition of the genitals or pubic area of any person." N.C. Gen. Stat. § 14-190.13(5)(g) (2021). "Our appellate courts have defined the term 'lascivious' as 'tending to arouse sexual desire.'" *State v. Corbett*, 264 N.C. App. 93, 100, 824 S.E.2d 875, 880 (2019) (citation omitted). "[T]he General Assembly intended that the relevant statutory language be construed broadly in order to provide minors with the

maximum reasonably available protection from sexual exploitation." *State v. Fletcher*, 370 N.C. 313, 329, 807 S.E.2d 528, 540 (2017).

The parties each compare the present case to this Court's decisions in *State v. Ligon*, 206 N.C. App. 458, 697 S.E.2d 481 (2010), and *State v. Corbett*, 264 N.C. App. 93, 824 S.E.2d 875. In *State v. Ligon*, this Court was asked to determine whether photographs taken by the Defendant of a minor female met the statutory definition of "sexual activity." *Ligon*, 206 N.C. App. at 459, 697 S.E.2d at 483. The State presented photographs showing a minor female "sitting on a bench with her legs spread apart." *Id.* at 460, 697 S.E.2d at 483. Though some of the photographs showed either the defendant or the female pulling her shorts back and exposing her crotch, "[d]ue to the lighting in the photographs, it could not be determined whether the pictures showed [the female's] private parts or underpants." *Id.* The defendant claimed he took the photographs as evidence of marks left when his dog scratched the minor female, but also admitted to a detective that he intended to masturbate to the photographs when he returned home. *Id.* at 461, 697 S.E.2d at 484.

The State alleged the photographs showed "sexual activity" because they depicted the touching of the female's genitals as masturbation. *Id.* at 469, 697 S.E.2d at 489; *see* N.C. Gen. Stat. §§ 14-190.13(5)(a), (c). The Court noted that "the State failed to procure the testimony of the alleged victim" and "presented no evidence that [the defendant] had done anything to satisfy the statutory definition of prohibited sexual conduct." *Id.* It then held that "the pictures [did] not depict any sexual

activity" because the statutory definition of masturbation was "not satisfied by a photograph of [the female] merely having her hand in proximity to her crotch area" or a photograph of the defendant "touching [her] shorts, not her body." *Id.*

In *State v. Corbett*, this Court was again asked to "address the question of when charges of . . . sexual exploitation are properly submitted to a jury." *Corbett*, 264 N.C. App. at 94, 824 S.E.2d at 876. The State admitted into evidence a photograph "showing [his minor daughter] standing naked in [the defendant's] room[.]" *Id.* at 95, 824 S.E.2d at 877. The minor female was shown "fully nude except for her socks" and "[t]he focal point of the picture [was her] naked body." *Id.* at 100, 824 S.E.2d at 880. The defendant argued that the photograph did not show "sexual activity" because "'[w]hile [the female was] unclothed, her arms [were] crossed in front of her body and her hands block any view of her genital area.'" *Id.*

The Court disagreed with the defendant's argument, holding a reasonable juror could determine the photograph was "lascivious" because it was "clearly intended to elicit a sexual response based on the context in which it was taken[.]" *Id.* The facts that the photograph centered on the minor female's naked body and was taken in a bedroom supported the Court's holding. The Court further held that "reasonable jurors could have determined that the photograph at issue depicted [the minor female's] pubic area." *Id.* Though her "hands [were] positioned over her genitalia in the photograph, the fingers of her left hand [were] spread far enough apart that clearly visible gaps exist[ed] between them such that her pubic area [was]

at least partially visible." *Id.* The partial visibility of the minor female's pubic area was enough to constitute "sexual activity" under sections 14-190.16 and 14-190.13(5)(g).

We hold the present case to be similar to *Corbett* and distinguishable from *Ligon*. The State presented the video recording of Defendant's confession to Detective Doiel and Agent Stovall into evidence, and played it for the jury to view. In the video, Defendant admitted that he went into Rachel's bedroom late at night and took photographs of Rachel while she sat on her bed fully nude, with her legs "slightly apart." Like the photographs in *Corbett*, the photographs here focused on Rachel's naked body while she sat on her bed, in her bedroom. Defendant prefaced the photographs by bargaining with Rachel for a favor, saying "I'll buy you anything for Christmas if you just do this one thing for me." After acquiring the photographs, Defendant left Rachel's room and went to the bathroom for ten to fifteen minutes. In context, a reasonable juror could have determined that the photographs exhibited Rachel in a lascivious way and that her pubic area was at least partially visible between her legs.

The present case differs from *Ligon* in two meaningful ways. First, the State claimed that the photographs showed Rachel's unclothed pubic area, not that they showed Rachel being touched or masturbating. The State had to present evidence only that the photographs depicted Rachel's unclothed pubic area, not that anyone was touching that area. Second, the State here procured the testimony of Rachel, the

alleged victim. Rachel testified she was fully nude and "sitting up" on her bed when Defendant took the photographs. Rachel "heard the sound and the camera and the light flashed" twice on Defendant's phone. Rachel further explained that she was "looking directly at the phone," "[Defendant] was directly in front of [her]," and her hands were placed beside her on the bed. Rachel's testimony indicated that the photographs were taken in good lighting, directly in front of her, and her hands were not obstructing her pubic area from view. Even if her legs were only "slightly apart," a reasonable juror could have determined that the photographs depicted Rachel's pubic area.

Defendant contends this evidence did not prove the State's case because Detective Doiel's testimony contradicted Rachel's testimony. Detective Doiel testified that Rachel stated she never saw the photographs. On re-cross examination, Rachel testified Defendant showed her the photographs after taking them and she could at least see her breasts in them. Notably, though, there was no contradiction as to Rachel and Defendant's positioning when the photographs were taken. In total, Rachel's testimony still tended to show Defendant's guilt and contradictions in the evidence do not warrant dismissal; they instead present a question of weight and credibility for the jury to decide. *See Lowery*, 309 N.C. at 766, 309 S.E.2d at 236.

We recognize that the State's evidence in *Ligon* and *Corbett* included direct evidence that is not present in this case: the State submitted the photographs alleged to depict sexual activity into evidence and showed them to the jury. Though his

arguments include assertions that the evidence was, at least in part, insufficient because the photographs were not present in this case, Defendant has failed to show precedent which states the photographs must be available at trial to prove the charge of sexual exploitation. The evidence needs only to show the defendant, *inter alia*, "induce[d], coerce[d], [or] encourage[d]" the minor to engage in "sexual activity" so the photographs could be taken. In the absence of direct evidence, the State satisfied its burden to prove these elements through sufficient circumstantial evidence. *See Cinema I Video*, 83 N.C. App. at 570, 351 S.E.2d at 321.

### III.    Conclusion

We hold that the State's case, including the testimony of the victim and Defendant's own admission, presented sufficient evidence of Defendant's guilt beyond mere conjecture or suspicion from which a reasonable jury could conclude that the photographs contained sexual activity beyond a reasonable doubt. The trial court did not err in denying Defendant's motion to dismiss the charge of first-degree sexual exploitation of a minor.

NO ERROR.

Judges HAMPSON and STADING concur.